UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CATHY ZIMMERMAN,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:14-cv-01711-MHH |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Cathy Zimmerman seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied her claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Zimmerman applied for a period of disability and disability insurance benefits and supplemental security income on January 20, 2012. (Doc. 8-6, pp. 4, 6). Ms. Zimmerman alleges that her disability began on October 29, 2010. (Doc. 8-3, p. 48; Doc. 8-6, p. 6). The Commissioner initially denied Ms. Zimmerman's

claims on May 10, 2012. (Doc. 8-5, p. 2). Ms. Zimmerman requested a hearing before an Administrative Law Judge (ALJ). (Doc. 8-5, p. 16). The ALJ issued an unfavorable decision on April 23, 2013. (Doc. 8-3, pp. 24-35). On July 7, 2014, the Appeals Council declined Ms. Zimmerman's request for review (Doc. 8-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's decision is supported by substantial

evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Zimmerman has not engaged in substantial gainful activity since October 29, 2010, the alleged onset date. (Doc. 8-

3

3, p. 29). The ALJ determined that Ms. Zimmerman suffers from the following severe impairments: lumbar spine degenerative disc disease, stenosis, spondylolisthesis, status-post fusion osteoarthritis of the left knee, adhesive capsulitis of the left shoulder, obesity, fibromyalgia, migraine headaches, depression, anxiety, and alcohol abuse. (Doc. 8-3, p. 29). Based on a review of the medical evidence, the ALJ concluded that Ms. Zimmerman does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, pp. 30-32).

Next, the ALJ determined that Ms. Zimmerman has the RFC:

> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is to avoid more than occasional kneeling, stooping, crouching, crawling, balancing, or climbing of stairs or ramps; she is to avoid all climbing of ropes, ladders or scaffolds, as well as exposure to dangerous machinery or unprotected heights; and she is restricted to following simple instructions, working with objects rather than the general public, and without close supervision or interaction with coworkers.

(Doc. 8-3, p. 32).

Based on this RFC, the ALJ concluded that Ms. Zimmerman is unable to perform her past relevant work as a child care worker. (Doc. 8-3, p. 33). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Zimmerman can perform, including pricer or tagger, semi-conductor marker, and wire cutter. (Doc. 8-3, p. 34). Accordingly, the ALJ

determined that Ms. Zimmerman is not disabled as defined in the Social Security Act. (Doc. 8-3, p. 35).

IV. **ANALYSIS**

Ms. Zimmerman argues that she is entitled to relief from the ALJ's decision because: (1) the ALJ failed to properly consider Ms. Zimmerman's pain consistent with the Eleventh Circuit's three part pain standard, and (2) the ALJ failed to properly evaluate lay testimony from her husband. The Court disagrees.

### A. **The ALJ properly considered Ms. Zimmerman's subjective complaints of pain.**

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. (2015) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson,* 284 F.3d at 1225. "While an adequate credibility finding need

not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

The ALJ summarized Ms. Zimmerman's testimony.  (Doc. 8-3, p. 33).  The ALJ then properly recited the pain standard and found that Ms. Zimmerman's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  (Doc. 8-3, p. 32).  The ALJ also articulated explicit and adequate reasons for rejecting Ms. Zimmerman's testimony about the severity of her pain.[1]

Ms. Zimmerman testified at her hearing that her fibromyalgia, migraines, and surgery sites "always seem[] to cause pain whether I'm standing, or sitting, or laying down, or walking, or carrying things.  I just never can seem to not be in pain."  (Doc. 8-3, pp. 47-48).  Regarding her migraines, Ms. Zimmerman testified that over a period of two years, she woke up every day with a headache.  (Doc. 8-3, p. 49).  She received injections and saw specialists, but "it just seemed like it just never ended."  (Doc. 8-3, p. 49).  Ms. Zimmerman testified that she had had four surgeries since 2010.  She testified that she was still experiencing complications from her last surgery in October 2012.  (Doc. 8-3, p. 51).

---

[1] Ms. Zimmerman has not challenged the ALJ's conclusions regarding her mental impairments. Therefore, the Court considers only Ms. Zimmerman's testimony concerning her physical impairments and the ALJ's corresponding findings.

Ms. Zimmerman has trouble raising her arms due to pain. She explained that she is unable to pick up her three year old son and "has never been able to enjoy picking him up, and holding him like I should be able to do." (Doc. 8-3, p. 51). Ms. Zimmerman's pain has aggravated her depression. She "has trouble getting out of bed every day." (Doc. 8-3, p. 51). Ms. Zimmerman explained that her pain caused her to miss five or more days of work every month. (Doc. 8-3, p. 48). Because she missed so much work, Ms. Zimmerman could "never keep a job." (Doc. 8-3, p. 49).

When evaluating a claimant's subjective symptoms, the ALJ may consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations. *Moreno v. Astrue*, 366 Fed. Appx. 23, 28 (11th Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

As part of his credibility analysis, the ALJ noted that Ms. Zimmerman's medical records confirmed that she "underwent several surgical procedures since the alleged onset date." (Doc. 8-3, p. 33). Those surgical procedures took place on the following dates: October 14, 2011; August 6, 2012; and August 24, 2012.

7

(Doc. 8-9, p. 137; Doc. 8-10, pp. 54-55).[2]  In his opinion, the ALJ discussed records from these surgeries and records concerning additional treatment that Ms. Zimmerman received for her back, knee, and shoulder pain.  (*See* Doc. 8-3, pp. 29-30).

The ALJ cited consultative examiner Dr. Prem Gulati's April 17, 2012 report.  That report post-dates Ms. Zimmerman's September 2008 and October 2011 surgeries.  Dr. Gulati found that Ms. Zimmerman "had normal nerves, reflexes, sensation, motor functioning, [] grip strength" and negative straight leg raising.  (Doc. 8-3, p. 33; *see also* Doc. 8-10, pp. 34-36).  The ALJ explained that other than "mildly antalgic gait," Dr. Gulati found "no particular limitations of functioning."  (Doc. 8-3, p. 33).

The ALJ also referred to October 2012 treatment notes from Ms. Zimmerman's back surgeon, Dr. Larry Parker.  In those notes, Dr. Parker indicated that Ms. Zimmerman "was very pleased with the results of her [back] surgery, and that she had full strength, sensation, and range of motion."  (Doc. 8-3, p. 33).

The ALJ explained that consultative examiner Dr. Lois Pope "opined that [Ms. Zimmerman's] alcohol abuse contributed to her mental limitations, but that she could do whatever she was motivated to do."  (Doc. 8-3, p. 33).  The ALJ also noted that no "treating source has expressed an opinion regarding [Ms.

---

[2] Ms. Zimmerman also had back surgery on November 24, 2008.  (Doc. 8-9, p. 119).  This procedure took place approximately two years before the alleged onset date.

Zimmerman's] functional capacity or on the ultimate issue of disability." (Doc. 8-3, p. 33).

Although the ALJ did not specifically list the factors outlined in 20 C.F.R. § 4040.1529(c)(3), it is clear that the ALJ thoroughly considered the treatment that Ms. Zimmerman received over a number of years and the measures she has taken to relieve her symptoms, and the ALJ rejected Ms. Zimmerman's subjective complaints based on this objective medical evidence. (*See* Doc. 8-3, pp. 29-30, 32-33).

To support her allegations of disabling pain, Ms. Zimmerman relies on Dr. Gulati's statement in his April 2012 consultative report that Ms. Zimmerman was scheduled to have surgery in the summer of 2012, and his opinion that Ms. Zimmerman could not work until her rehabilitation was complete. (Doc. 11, pp. 14-15; *see also* Doc. 8-10, p. 36). Dr. Gulati's statement that Ms. Zimmerman could not work until her rehabilitation was complete after her scheduled surgery in the summer of 2012 is not as persuasive as Ms. Zimmerman suggests. It is unclear from the record whether Dr. Gulati meant that Ms. Zimmerman could not work from the day he examined her in April 2012 until her rehabilitation was complete or whether Dr. Gulati meant that Ms. Zimmerman currently could work but would not be able to maintain gainful employment from the time of her summer 2012 surgery until her rehabilitation was complete. Dr. Gulati's unremarkable

9

examination findings and his failure to document functional limitations suggest that as of April 2012, Ms. Zimmerman could work. (*See* Doc. 8-10, pp. 35-36). Assuming that Dr. Gulati's opinion was that Ms. Zimmerman could not work from April 2012 until her rehabilitation was complete, the record contains no evidence supporting Dr. Gulati's statement.

During a May 24, 2012 office visit with Dr. John Greco, Ms. Zimmerman complained of knee and shoulder pain. (Doc. 8-10, p. 48). Regarding Ms. Zimmerman's knee pain, Dr. Greco noted that he would try to get authorization to perform a Synvisc One injection because previous cortisone injections had not provided relief. (Doc. 8-10, p. 48). Dr. Greco diagnosed Ms. Zimmerman with rotator cuff tendinitis/bursitis, and he gave Ms. Zimmerman an injection to treat her shoulder pain. (Doc. 8-10, pp. 48-49). Dr. Greco recommended "a little bit of therapy" and instructed Ms. Zimmerman to return in three to four weeks. (Doc. 8-10, p. 49).

Ms. Zimmerman saw Dr. Greco again on July 5, 2012. Dr. Greco noted that the shoulder injection did not provide "that much relief." (Doc. 8-10, p. 50). Dr. Greco explained that he believed that shoulder surgery would "get her well." (Doc. 8-10, p. 51). Also during this visit, Dr. Greco injected Ms. Zimmerman's knee with Synvisc One. (Doc. 8-10, p. 51). After shoulder surgery, on July 27, 2012, Dr. Greco noted that Ms. Zimmerman was "pleased with her repair," and he

believed that "she [was] going to have a nice outcome." (Doc. 8-10, p. 52). Dr. Greco instructed Ms. Zimmerman to return in six weeks for a final visit. (Doc. 8-10, p. 52). Between May 24, 2012 and July 27, 2012, Dr. Greco placed no restrictions on Ms. Zimmerman's activities.

Consistent with Dr. Gulati's prediction, Ms. Zimmerman had back surgery on August 6, 2012 and August 24, 2012. Dr. Parker performed a lumbar fusion at L4-5. (Doc. 8-10, pp. 54-55). During a follow up visit on September 2012, Ms. Zimmerman complained of some pain in her back and leg, but Dr. Parker commented that she was "getting better on a daily basis." (Doc. 8-10, p. 57). Ms. Zimmerman's incision site was "healing well." She had full range of motion in all of her extremities, and her strength was 5/5 in all muscle groups. (Doc. 8-10, p. 57). Dr. Parker asked Ms. Zimmerman to return in six weeks. He recommended that Ms. Zimmerman use a brace and encouraged her to engage in "physical activities such as walking and doing activities around the home." (Doc. 8-10, p. 57).

Ms. Zimmerman visited Dr. Greco on September 7, 2012. Although Ms. Zimmerman reported that her back surgery had "slowed down her shoulder," Dr. Greco noted:

> I think all in all she is doing pretty well. She has a little bit of pain but it is due to a little external rotation stiffness. By and large I think she is doing fairly well though and I am going to continue to see her back

> in the office on an as-needed basis. But I think all in all she is going to do very well.

(Doc. 8-10, p. 58).

Ms. Zimmerman saw Dr. Parker again on October 4, 2012. Dr. Parker explained that Ms. Zimmerman was "doing very well and [was] pleased with the outcome of her surgery. Overall she is showing significant improvement." (Doc. 8-10, p. 59). Ms. Zimmerman had good range of motion in her hips, knees, and ankles with no pain, crepitus, or deformity. (Doc. 8-10, p. 59). Dr. Parker noted that he would wean Ms. Zimmerman out of her brace and place her in physical therapy for her back and shoulder. (Doc. 8-10, p. 59). Dr. Parker asked Ms. Zimmerman to return in four months. (Doc. 8-10, p. 59). Although Dr. Parker's October 4, 2012 treatment note references therapy, the record contains no evidence of physical therapy or rehabilitation visits. The record also contains no evidence suggesting that Ms. Zimmerman was unable to work while she completed her therapy. Accordingly, despite Dr. Gulati's statement that Ms. Zimmerman would be unable to work until her rehabilitation was complete, Ms. Zimmerman has not submitted evidence indicating that her impairments "ha[d] lasted or [could] be expected to last for a continuous period of at least 12 months." *Bouler v. Comm'r of Soc. Sec.*, 624 Fed. Appx. 728, 729 (11th Cir. 2015). Although social security proceedings are inquisitorial, not adversarial, "claimants must establish that they

are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007).  Ms. Zimmerman has failed to carry her burden.

As part of her argument that the ALJ failed to properly evaluate her pain under the pain standard, Ms. Zimmerman challenges the Commissioner's decision in light of evidence that she submitted to the Appeals Council after the date of the ALJ's decision.  (Doc. 11, pp. 15-16).  Because Ms. Zimmerman does not limit her challenge to the ALJ's decision, the Court construes Ms. Zimmerman's appeal as applicable to both the ALJ's decision to deny benefits and the Appeals Council's decision to deny review based on the new evidence that Ms. Zimmerman presented.  "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's decision denying Social Security benefits."  *Ingram v.*, 496 F.3d at 1258.  The Court has reviewed the evidence that Ms. Zimmerman submitted to the Appeals Council; it does not provide a basis for relief from the administrative decision in this case.

The new evidence consists of treatment notes from 2013 and early 2014.  (Doc. 8-10, pp. 70-88).  In January 2013, Ms. Zimmerman saw Dr. Greco for pain and tenderness in her shoulder.  Dr. Greco recommended another round of injections.  He also noted that Ms. Zimmerman had some pain in her knee, but she had good stability, and Dr. Greco documented no limitations based on Ms.

Zimmerman's pain. (Doc. 8-10, p. 70). In May 2013, Ms. Zimmerman saw Dr. Parker because she was experiencing back pain. (Doc. 8-10, p. 72). Dr. Parker noted that Ms. Zimmerman's August 2012 fusion site at L4-5 was "consolidating nicely." (Doc. 8-10, p. 72). Dr. Parker also noted that Ms. Zimmerman had "minimal degenerative changes at the level above" the fusion site. (Doc. 8-10, p. 72). In May 2013 and August 2013, Ms. Zimmerman had back surgery to correct the "advanced space collapse at L3-4." (Doc. 8-10, pp. 72-73, 79, 82). Her prior fusions at L4-5 remained solid. (Doc. 8-10, p. 80).

By August 29, 2013, Ms. Zimmerman was "doing pretty well from her surgery." (Doc. 8-10, p. 81). Dr. Parker noted that Ms. Zimmerman was "active and taking care of her kids," and she was "walking very well." (Doc. 8-10, p. 81). On October 16, 2013, Ms. Zimmerman reported to Dr. Parker that she was "feeling pretty good." Ms. Zimmerman was "upright and mobile." Dr. Parker found that she was "doing well." X-rays showed "good fusion at L3-4, L4-5, and L5-S1." (Doc. 8-10, p. 82). Dr. Parker asked Ms. Zimmerman to return in three months. (Doc. 8-10, p. 82). In January 2014, Ms. Zimmerman complained of myofascial pain. Dr. Parker suggested that Ms. Zimmerman try physical therapy; he placed no restrictions on her activities. (Doc. 8-10, p. 83).

Thus, even though Ms. Zimmerman had back surgery twice after the ALJ issued his opinion, neither surgery caused a treating physician to limit Ms.

Zimmerman's physical activity. The record leaves little doubt that Ms. Zimmerman has suffered from back, shoulder, and knee pain for several years, but the pain was not significant enough to warrant restrictions on Ms. Zimmerman's activities while she received treatment for her pain. Therefore, substantial evidence supports the ALJ's conclusion that Ms. Zimmerman can perform a reduced range of light work despite her pain.

### B. The ALJ properly considered the lay testimony of Ms. Zimmerman's husband.

Testimony from Ms. Zimmerman's husband does not change the Court's conclusion. Lay testimony of family members is evidence of a claimant's subjective allegations of pain. *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). An ALJ does not err by failing to make specific credibility findings regarding lay witness testimony if the ALJ's credibility findings regarding the claimant's testimony sufficiently imply a rejection of the lay witness's testimony. *See Osborn v. Barnhart,* 194 Fed. Appx. 654, 666 (11th Cir.2006) (per curiam) (unpublished) ("[I]f the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, . . . we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony.") (citations omitted); *see also East v. Barnhart*, 197 Fed. Appx. 899, 901, n.3 (11th Cir. 2006) (finding that the ALJ did not err by failing to explicitly accept or reject statements from the claimant's mother where the information

15

essentially "duplicated and corroborated" the claimant's testimony, which the ALJ explicitly found not credible).

In this case, Mr. Zimmerman testified that Ms. Zimmerman was unable to work due to back, leg, and shoulder pain. (Doc. 8-3, p. 60). Mr. Zimmerman estimated that Ms. Zimmerman missed two or three days of work per month because of her pain. (Doc. 8-3, p. 60). He has witnessed Ms. Zimmerman's difficulty standing and walking, and he testified that when Ms. Zimmerman has a migraine, she is unable to function. (Doc. 8-3, p. 61). Mr. Zimmerman also testified that he and the couple's daughter perform the household duties that Ms. Zimmerman no longer performs. (Doc. 8-3, p. 62).

The ALJ acknowledged Mr. Zimmerman's testimony but did not review it in detail or make an explicit credibility finding. (Doc. 8-3, p. 33). Because Mr. Zimmerman's testimony is substantially similar to and duplicative of Ms. Zimmerman's testimony about her pain (*compare* Doc. 8-3, pp. 47-52 *with* Doc. 8-3, pp. 60-63), the ALJ's specific credibility determination regarding Ms. Zimmerman's testimony sufficiently implies a rejection of Mr. Zimmerman's testimony as well. *See Osborn,* 194 Fed. Appx. at 666.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards.

The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

  **DONE** and **ORDERED** this March 21, 2016.

          _____
          **MADELINE HUGHES HAIKALA**
          UNITED STATES DISTRICT JUDGE